B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) U.S. BANKRUPTCY COURT 2019 MAR 14 P 1:44 |
|---|---|

| **PLAINTIFFS** Anesha Mohammed | **DEFENDANTS** Leoncio Garcia |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Law office of Carl Brignoli PO Box 320530 Boston MA 02152   (866) 288-1902 | **ATTORNEYS** (If Known) David Madoff 124 Washington St. Suite 202 Foxborough MA 02035 |
|---|---|

| **PARTY** (Check One Box Only) ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☒ Creditor   ☐ Other ☐ Trustee | **PARTY** (Check One Box Only) ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor   ☐ Other ☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to determine the non-dischargeability of a debt under Section 523(a)(2)(A) and Section 727 (a)(4) of the Bankruptcy Code.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud ①
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column) ②

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☒ 65-Dischargeability - other ③

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 257,087.10 |

Other Relief Sought A Determination that this debt is non-dischargeable due to fraud.

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>*Leoncio Garcia* | BANKRUPTCY CASE NO.<br>*19-10634* | |
| DISTRICT IN WHICH CASE IS PENDING<br>*Massachusetts* | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>*3/12/19* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>*Carl Brignoli* | |

*U.S. BANKRUPTCY COURT  2019 MAR 14  1:55*

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS   U.S. BANKRUPTCY COURT

DOCKET NO. 19-10634  4  P  1 49
Adv. Proc. No.

| | |
|---|---|
| IN RE: LEONCIO GARCIA | ) |
| Debtor | ) |
| | ) |
| | ) |
| ANESHA MOHAMMED | ) |
| PLAINTIFF | ) |
| v. | ) |
| | ) |
| LEONCIO GARCIA | ) |
| DEFENDANT | ) |

## COMPLAINT TO DETERMINE NON-DISCHARGABILITY OF DEBT UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE AND FOR DENIAL OF DISCHARGE UNDER SECTION 727(a)(4) OF THE BANKRUPTCY CODE

Plaintiff, Anesha Mohammed, through her counsel, as and for their complaint against Defendant Leoncio Garia, upon their knowledge and upon information and belief as to other matters, allege as follows:

### PARTIES

1. The Plaintiff, Anesha Mohammed, is an individual of legal age presently residing at 103 Gordon Ave., Hyde Park, Suffolk County, Massachusetts.

2. The Defendant Leoncio Garcia is an individual of legal age presently residing at 17 Beech St., Dedham, Norfolk County, Massachusetts.

### JURISDICTION AND VENUE

3. On February 28, 2019, (the "Petition Date"), Defendant Leoncio Garcia filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

4. The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. Section 157 and Section 1334.

5. This is an action pursuant to Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure for a determination that a debt owed by Defendant to Plaintiff is not

dischargeable under Sections 523(a)(2)(A) and (a)(6) of the Bankruptcy Code. As such, this matter is a core proceeding under 28 U.S.C. Section 157 (b)(2)(A),(I) and (O).

6. Venue is proper before this court pursuant to 28 U.S.C. Sections 1408 and 1409.

## **FACTUAL ALLEGATIONS**

7. Sometime in late May, 2018, the Plaintiff Anesha Mohammed and the Defendant Leoncio Garcia discussed the Defendant doing some home improvement work on the Plaintiff's home.

8. Mr. Garcia agreed to do the work and requested a down-payment so he could purchase materials.

9. Ms. Mohammed paid the Defendant $1,950.00 on June 13, 2018 as a deposit on the work that was to be done on her bathroom.

10. On June 16, 2018, the parties met at Mr. Garcia's home, at the invitation of Mr. Garcia, so Mr. Garcia could give her a sense of the work he was able to do. Mr. Garcia assured Ms. Mohammed that he was licensed and insured as a home improvement contractor.

11. The parties then travelled to Ms. Mohammed's home to look at the work that needed to be done. The parties agreed on the scope and cost of the project, which included, but was not limited to, refurbishing the upstairs bathroom, installing new windows and insulate the porch, fixing and replacing the outside stairs, walkway, and landing, installing a fence around the yard, rebuilding a deck and possibly installing a second floor deck, rewiring the home, installing new lighting fixtures, and removing and replacing numerous windows and skylights. The parties also agreed that Mr. Garcia would pull all the necessary permits to commence work on the home.

12. Mr. Garcia stated he could start working that next Monday, June 18, 2018, if the Plaintiff could provide a second deposit.

13. Ms. Mohammed gave the Defendant a check in the amount of $30,666.00 which was one third of the cost of the project. Ms. Mohammed asked Mr. Garcia for a contract. Mr. Garcia stated he would prepare a contract and deliver it to Ms. Mohammed on Monday when he was going to start the project.

14. Mr. Garcia appeared on June 18, 2018 without the contract. When Ms. Mohammed asked for the contract, Mr. Garcia indicated that he would get one to her the next day.

15. Mr. Garcia never provided a written contact to the Ms. Mohammed.

16. On June 28, 2018, the parties agreed that Mr. Garcia would install central air conditioning in Ms. Mohammed's home.

17. Ms. Mohammed wanted to give another one third deposit.  Mr. Garcia insisted that she pay the full amount of $15,000.00 as if she paid in full, he could have the central air installed that weekend.

18. On June 28, 2018, Ms. Mohammed wrote a check to Mr. Garcia for the $15,000.00. Again, Ms. Mohammed asked for a written contract.  Again, Mr. Garcia said he would get to it. She also gave Mr. Garcia a check for $1,950.00 as a final deposit for the work on the bathroom.

19. Mr. Garcia did not install the central air unit.

20. On July 3, 2018. Mr. Garcia demanded $6,000.00 for the electrical work.

21. Ms. Mohammed agreed and wrote a check for $6,000.00 to Mr. Garcia.

22. The electrical work was barely started, and the central air unit was still not installed.

23. Ms. Mohammed demanded the return of her $15,000.00 as it was clear that the central air unit was not going to be installed.

24. Mr. Garcia refused to return her $15,000.00.

25. From July 3, 2018 through July 16, 2018, no work was done at Ms. Mohammed's home.  Again, Ms. Mohammed asked for Mr. Garcia to provide her a contract.  Mr. Garcia again agreed to provide a contact, but never did so.

26. On July 16, 2018, Mr. Garcia brought his carpenter's wife to Ms. Mohammed's home stating that she was depressed sitting at home by herself and wanted to give her something to do.

27. Ms. Mohammed was skeptical as she noticed an ankle bracelet around this woman's ankle.

28. Mr. Garcia explained that she was in the county illegally and he was taking her to immigration check in, lawyers, and other appointments instead of working on Ms. Mohammed's home.

29. Mr. Garcia then admitted that all of his workers were undocumented.

30. Ms. Mohammed was aghast in that not only did Mr. Garcia hire illegal immigrants, but they did not have any home improvement skills or licenses that would allow them to legally work on her home.

31. On July 19, 2018, some sub-contractors arrived to install some insulation in the attic.

32. Ms. Mohammed was told, for the first time, that neither she nor her sister and her children could stay in the home while the installation was being installed.

33. Ms. Mohammed contacted Mr. Garcia who offered to pay for a hotel for Ms. Mohammed, her sister and her child.

34. Ms. Mohammed and her sister reluctantly accepted Mr. Garcia's offer.

35. Mr. Garcia did not pay for the hotel stay as he promised.

36. On August 2, 2018, Mr. Garcia told Ms. Mohammed that he had hired a new subcontractor "John" who would take care of everything.

37. From August 2, through August 4, 2018, it rained heavily, and Ms. Mohammed's roof started to leak where Mr. Garcia had installed skylights.

38. Mr. Garcia told. Ms. Mohammed that he was going out of town, and if there were any issues, she should call "John".

39. Ms. Mohammed called "John" about the leaks. "John" appeared on Thursday and took some pictures but refused to do anything about the leaks.

40. Ms. Mohammed protested as she did not want to go four days with a leaking roof and she was worried about mold, rot, and warping.

41. "John" told her that he did not work weekends and she would have to wait until Monday.

42. Ms. Mohammed texted Mr. Garcia numerous times about this issue.

43. Mr. Garcia said it was not his fault and he would not repair it. He also threatened to quit the job.

44. On August 8, 2018, Mr. Garcia texted Ms. Mohammed that he quit the job and would not be returning.

45. Ms. Mohammed asked for a refund of her money that she paid him. Mr. Garcia refused to refund any of her money.

46. Mr. Garcia did not complete the work in the bathroom or the attic in breach of the parties' oral contract.

47. Mr. Garcia did not install the central air unit in breach of the oral contract.

48. Mr. Garcia did not obtain any permits for any of the work her performed in violation of the contract.

49. Mr. Garcia was neither licensed as a home improvement contractor at the time of the start of the work, nor was he insured at the time of the start of the work despite his explicit assurances to the Plaintiff that he was in fact licensed and insured.

50. On or about October 8, 2018, Ms. Mohammed obtained an estimate as to what it would cost to repair the damage done by Mr. Garcia, as well as to complete the work that he started, but never finished.

51. This structural engineer found that not only was Mr. Garcia's work, shoddy, incomplete, and not done in a workmanlike manner, but that he actually damaged the foundation of the home, undermining the structural integrity of the home.

52. It will cost at least $30,000.00 to repair the damage that Mr. Garcia caused to Ms. Mohammed's home.

52. On or about December 12, 2018, the Plaintiff filed suit against the Defendant in the Norfolk County Superior Court alleging, among other things, breach of contract, violation of M.G.L. Chapter 93A, violation of M.G.L. Chapter 142A and Fraud. (EXHIBIT "A")

53. On or about January 15, 2019, the Defendant, though his counsel, filed an answer and Affirmative Defenses (EXHIBIT "B")

54. In his answer, the Defendant admits that he did not provide a written contract to the Plaintiff, did not install the central air conditions unit despite receiving the funds to do so, did not pull the proper permits, and that he was not licensed or insured.

55. On or about January 16, 2019, the Plaintiff mailed a motion to attach the real estate of the Defendant to the Defendant's attorney. Attached to this motion is an affidavit from the Plaintiff (EXHIBIT "C")

56. The Defendant's attorney did not respond within the time frame outlined in Massachusetts Rules of Superior Court Rule 9A, and on February 20, 2019, the Plaintiff mailed the motion to attach real estate to the Norfolk County Superior Court.

57. The Defendant then filed bankruptcy on February 28, 2019.

**COUNT I.  A Determination that the debt to Plaintiff is non-dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.**

58. The Plaintiff incorporates paragraphs one through fifty-seven above into this count with the same force and effect.

59. The Defendant represented to the Plaintiff that he was both licensed and insured. This assertion turned out to be false and the Plaintiff would not have hired the Defendant but for the Defendant's false and fraudulent statements (See Exhibit "C" lines 6 and 32).

60. The Defendant on numerous occasions, promised to deliver a written contract to the Plaintiff, but failed to do so.

61. The Plaintiff would not have hired the Defendant if she had known that the Defendant was not going to provide her a written contract in violation of M.G.L. Chapter 142A. (See Exhibit "B" line 12)

62. The Defendant fraudulently obtained $15,000.00 from the Plaintiff to install a central air conditioning unit. The Defendant failed to install the unit and failed to return the money the Plaintiff paid him to install the central air unit. (See Exhibit "B" line 16)

63. Each of the foregoing actions and representations made by the Defendant were materially false when made. The Defendant knew, or should have known, that the foregoing representations were false when made.

64. The Defendant made such false representations with the specific intent to mislead the Plaintiff for his own personal benefit or in the furtherance of his own personal interests.

65. Through the Defendant's false and fraudulent statements to the Plaintiff which induced her to hire him for her home improvement project, the Defendant obtained money, property, and/or services by false pretense, false representation or actual fraud.

66. Accordingly, the debt owed by Defendant to Plaintiff is not dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.

**COUNT II. A Determination that the debt to Plaintiff is non-dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.**

67. The Plaintiff incorporates paragraphs one through sixty-six above into this count with the same force and effect.

68. By not providing a written contract, not pulling ANY permits, by intentionally and fraudulently stating to the Plaintiff that he was licensed and insured when he was not to induce her to hire him, by taking the Plaintiff money and not doing the work nor returning the money to the Plaintiff, the Defendant willfully and maliciously caused damage and injury to the Plaintiff.

69. Accordingly, the debt owed by Defendant to Plaintiff is not dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff demands relief as follows:

(a) Determining that the debt owed by Defendant to Plaintiff is not dischargeable pursuant to Section 523(a)(2)(A) and/or (a)(6) of the Bankruptcy Code; and

(b) Awarding Plaintiff costs and expenses, including reasonable attorneys' fees and costs of suit; and

(c) Awarding Plaintiff such other and further relief as may be just and proper.

The Plaintiff by its attorney

Carl Brugnoli, Esq.
PO Box 320530
Boston, MA  02132
Tel:  (866) 288-1902
BBO# 643430

**EXHIBIT "A"**

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

PLAINTIFF(S):    Anesha Mohammed

ADDRESS:    103 Gordon Ave.

Hyde Park, MA  02132

COUNTY
Norfolk

DEFENDANT(S):    Leoncio Garcia

GS Construction Corp.

ATTORNEY:    Carl Brugnoli

ADDRESS:    PO Box 320530

Boston, MA  02132

ADDRESS:    17 Beech St.

Dedham, MA  02026

BBO:    643430

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

CODE NO.    TYPE OF ACTION (specify)    TRACK    HAS A JURY CLAIM BEEN MADE?
A01    Services, Labor and Materials    F    ☒ YES    ☐ NO

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .................................................................................... $ _____
2. Total doctor expenses ...................................................................................... $ _____
3. Total chiropractic expenses ............................................................................. $ _____
4. Total physical therapy expenses ...................................................................... $ _____
5. Total other expenses (describe below) ............................................................ $ _____
                                                                                        Subtotal (A): $ _____

B. Documented lost wages and compensation to date ........................................... $ _____
C. Documented property damages to dated ............................................................ $ _____
D. Reasonably anticipated future medical and hospital expenses .......................... $ _____
E. Reasonably anticipated lost wages ................................................................... $ _____
F. Other documented items of damages (describe below) ...................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                                            TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
   The Plaintiff paid the Defendants to renovate her home.  The Defendants failed to complete the work in a workmanlike man        TOTAL: $    85566.00

Signature of Attorney/Pro Se Plaintiff: X                                    Date: 12/12/18

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X                                    Date: 12/12/18

COMMONWEALTH OF MASSACHUSETTS
NORFOLK SUPERIOR COURT

NORFOLK, ss                                                    DOCKET NO.:

| | | |
|---|---|---|
| ANESHA MOHAMMED | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| LEONCIO GARCIA | ) | |
| GS CONSTRUCTION CORP. | ) | |
| DEFENDANTS | ) | |
| | ) | |

Now comes the Plaintiff, Anesha Mohammed, by her attorney, Carl Brugnoli Esquire, complaining of the Defendants Leoncio Garcia and GS Construction Corp. as follows:

### COUNT I. BREACH OF CONTRACT

1. The Plaintiff, Anesha Mohammed is an individual of legal age presently residing at 103 Gordon Ave., Hyde Park, Suffolk County, Massachusetts.

2. The Defendant, Leoncio Garcia, is an individual of legal age presently residing at 17 Beech St., Dedham, Norfolk County, Massachusetts.

3. The Defendant, GS Construction Corp. is a duly organized Massachusetts corporation presently doing business at 17 Beech St., Dedham, Norfolk County, Massachusetts.

4. Sometime in late May, the parties discussed the Defendants doing some home improvement work on the Plaintiff's home.

5. Mr. Garcia agreed to do the work, and requested a down-payment so he could purchase materials.

6. Ms. Mohammed paid the Defendant $1,950.00 on June 13, 2018 as a deposit on the work that was to be done on her bathroom.

7. On June 16, 2018, the parties met at Mr. Garcia's home, at the invitation of Mr. Garcia, so Mr. Garcia could give her a sense of the work he was able to do. Mr. Garcia assured Ms. Mohammed that he was licensed and insured as a home improvement contractor.

8. The parties then travelled to Ms. Mohammed's home to look at the work that needed to be done. The parties agreed on the scope and cost of the project, which included, but

was not limited to, refurbishing the upstairs bathroom, install new windows and insulate the porch, fix and replace the outside stairs, walkway, and landing, install a fence around the yard, rebuild a deck and possible install a second floor deck, rewire the home, install new lighting fixtures, and remove and replace numerous windows and skylights. The parties also agreed that Mr. Garcia would pull all the necessary permits to commence work on the home.

9. Mr. Garcia stated he could start working that next Monday, June 18, 2018, if the Plaintiff could provide a second deposit.

10. Ms. Mohammed gave the Defendant a check in the amount of $30,666.00 which was one third of the cost of the project. Ms. Mohammed asked Mr. Garcia for a contract. Mr. Garcia stated he would prepare a contract and deliver it to Ms. Mohammed on Monday when he was going to start the project.

11. Mr. Garcia appeared on June 18, 2018 without the contract. When Ms. Mohammed asked for the contract, Mr. Garcia indicated that he would get one to her the next day.

12. Mr. Garcia never provided a written contact to the Ms. Mohammed.

13. On June 28, 2018, the parties agreed that Mr. Garcia would install central air conditioning in Ms. Mohammed's home.

14. Ms. Mohammed wanted to give another one third deposit. Mr. Garcia insisted that she pay the full amount of $15,000.00 as if she paid in full, he could have the central air installed that weekend.

15. On June 28, 2018, Ms. Mohammed wrote a check to Mr. Garcia for the $15,000.00. Again, Ms. Mohammed asked for a written contract. Again, Mr. Garcia said he would get to it. She also gave Mr. Garcia a check for $1,950.00 as a final deposit for the work on the bathroom.

16. Mr. Garcia did not install the central air unit.

17. On July 3, 2018. Mr. Garcia demanded $6,000.00 for the electrical work.

18. Ms. Mohammed agreed and wrote a check for $6,000.00 to Mr. Garcia.

19. The electrical work was barely started, and the central air unit was still not installed.

20. Ms. Mohammed demanded the return of her $15,000.00 as it was clear that the central air unit was not going to be installed.

21. Mr. Garcia refused to return her $15,000.00.

22. From July 3, 2018 through July 16, 2018, no work was done at Ms. Mohammed's home.  Again, Ms. Mohammed asked for Mr. Garcia to provide her a contract.  Mr. Garcia again agreed to provide a contact, but never did so.

23. On July 16, 2018, Mr. Garcia brought his carpenter's wife to Ms. Mohammed's home stating that she was depressed sitting at home by herself and wanted to give her something to do.

24. Ms. Mohammed was skeptical as she noticed an ankle bracelet around this woman's ankle.

25. Mr. Garcia explained that she was in the county illegally and he was taking her to immigration check in, lawyers, and other appointments instead of working on Ms. Mohammed's home.

26. Mr. Garcia then admitted that all of his workers were undocumented.

27. Ms. Mohammed was aghast in that not only did Mr. Garcia hire illegal immigrants, but they did not have any home improvement skills or licenses that would allow them to legally work on her home.

28. On July 19, 2018, some sub-contractors arrived to install some insulation in the attic.

29. Ms. Mohammed was told, for the first time, that neither she nor her sister and her children could stay in the home while the installation was being installed.

30. Ms. Mohammed contacted Mr. Garcia who offered to pay for a hotel for Ms. Mohammed, her sister and her child.

31. Ms. Mohammed and her sister reluctantly accepted Mr. Garcia's offer.

32. Mr. Garcia did not pay for the hotel stay as he promised.

33. On August 2, 2018, Mr. Garcia told Ms. Mohammed that he had hired a new subcontractor "John" who would take care of everything.

34. From August 2, through August 4, 2018, it rained heavily, and Ms. Mohammed's roof started to leak where Mr. Garcia had installed skylights.

35. Mr. Garcia told. Ms. Mohammed that he was going out of town, and if there were any issues, she should call "John".

36. Ms. Mohammed called "John" about the leaks.  "John" appeared on Thursday and took some pictures but refused to do anything about the leaks.

37. Ms. Mohammed protested as she did not want to go four days with a leaking roof and she was worried about mold, rot, and warping.

38. "John" told her that he did not work weekends and she would have to wait until Monday.

39. Ms. Mohammed texted Mr. Garcia numerous times about this issue.

40. Mr. Garcia said it was not his fault and he would not repair it. He also threatened to quit the job.

41. On August 8, 2018, Mr. Garcia texted Ms. Mohammed that he quit the job and would not be returning.

42. Ms. Mohammed asked for a refund of her money that she paid him. Mr. Garcia refused to refund any of her money.

43. Mr. Garcia did not complete the work in the bathroom or the attic in breach of the parties' oral contract.

44. Mr. Garcia did not install the central air unit in breach of the oral contract.

45. Mr. Garcia did not obtain any permits for any of the work her performed in violation of the contract.

46. On or about October 8, 2018, Ms. Mohammed obtained an estimate as to what it would cost to repair the damage done by Mr. Garcia, as well as to complete the work that he started, but never finished.

47. This structural engineer found that not only was Mr. Garcia's work, shoddy, incomplete, and not done in a workmanlike manner, but that he actually damaged the foundation of the home, undermining the structural integrity of the home.

48. It will cost at least $30,000.00 to repair the damage that Mr. Garcia caused to Ms. Mohammed's home.

## COUNT II. UNJUST ENRICHMENT

49. The Plaintiff incorporates paragraphs one through forty-eight above into this count with the same force and effect.

50. By receiving the benefit of payment from the Plaintiff without completing the work in a workmanlike manner, the Defendants have been unjustly enriched at the detriment of the Plaintiff.

## COUNT III.  VIOLATION OF M.G.L. Ch 142A

51. The Plaintiff incorporates paragraphs one through fifty above into this count with the same force and effect.

52. The Defendants did not provide a written contract, despite numerous demands from Ms. Mohammed, in violation of M.G.L. Ch. 142A.

53. A violation of this statute is a per se violation of M.G.L. Ch 93A.

## COUNT IV.  FRAUD

54. The Plaintiff incorporates paragraphs one through fifty-three above into this count with the same force and effect.

55. The Defendant held himself out to the Plaintiff as a fully licensed and insured home improvement contractor.

56. The Plaintiff would not have hired the Defendant if he was not fully licensed and insured.

57. According to the Massachusetts Consumer Affairs and Business Regulation, as of August 9, 2018, Mr. Garcia was not registered as a licensed contractor.  It seems his license expired on April 28, 2017 and was not renewed.  Further, the Defendant did not have insurance as he represented to the Plaintiff.

58. But for the Defendants' fraudulent representations, the Plaintiff would not have hired them to work on her home.

## COUNT V.  VIOLATION OF M.G.L. Ch 93A

59. The Plaintiff fully incorporates paragraphs one through fifty-eight into this count with the same force and effect.

60. This is an action under Massachusetts General Laws Chapter 93A as amended.

61. On or about June 16, 2018, the parties entered into an oral home improvement contract.  The Defendant represented that he was fully insured and licensed when he was not.  He further did not complete the work in a workmanlike manner as he was not qualified to undertake these home improvements.

62. The Defendant's actions have caused the Plaintiff to suffer a monetary loss as a result of the use of an unfair or deceptive act or practice declared unlawful by Massachusetts General Laws Chapter 93A Section 2(a) as will appear in greater detail below.

63. The employment of this act or practice has been declared unlawful by Mass. Gen. Laws. Ch. 93A, Section 2(a) which provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." That respondent's employment of said act or practice was willfully or knowingly done in violation of Mass. Gen. Laws. Ch. 93A, Section 2.

64. The employment of this act or practice has been declared unlawful by C.M.R. Chapter 940 Section 3:16(1) which outlaws any act that is"...oppressive or otherwise unconscionable in any respect." The respondent's employment of the said act or practice was willfully or knowingly done in violation of C.M.R. Chapter 940, Section 3:16(1).

65. That on or about October 17, 2018, the petitioner sent to the respondent, by first class mail, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered. The respondent, through his attorney, responded on or about November 3, 2018, denying any wrongdoing and did not offer a settlement.

66. That as a result of the unfair or deceptive practices employed by the said respondent, the petitioner has suffered monetary losses in that the Defendant has wrongfully withheld money for work that was not started or completed, as well as damaging the Plaintiff's home which will require her to spend additional money to correct the damage caused by the Defendants.


WHEREFORE, the Plaintiff demands:

1. The court award damages in the amount of $30,000.00, which represents the estimated amount that the Plaintiff paid out of pocket to repair her home and what he will have to pay to have the work completed properly;

2. The court award damages in the amount of $55,566.00, which represents the amount that Ms. Mohammed actually paid to Mr. Garcia.

3. That the damages actually caused to the petitioner be established and that an execution issue for triple the established amount thereon since the respondent's employment of the said act or practice was willfully or knowingly done in violation of Mass. Gen. Laws. Ch. 93A, Section 2 and C.M.R. Chapter 940 Section 3:16(1);

5. That the court find a violation of M.G.L.Ch. 142A;

6. The Plaintiff's attorney fees and costs;

7. And any such other and equitable relief that this Honorable Court may deem equitable and just.

THE PLAINTIFF DEMANDS A JURY TRIAL

The Plaintiff by its attorney

_____

Carl Brugnoli
PO Box 320530
Boston, MA  02132
Phone: (866) 288-1902
BBO# 643430
carl@brugnolilaw.com

Date:  December 12, 2018

**EXHIBIT "B"**

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.: 1882-CV-01591

ANESHA MOHAMMED,

Plaintiff,

v.

LEONCIO GARCIA AND
GS CONSTRUCTION CORP.,

Defendants.

ANSWER TO COMPLAINT AND
AFFIRMATIVE DEFENSES

Defendants, LEONCIO GARCIA AND GS CONSTRUCTION CORP., respond to the allegations contained in the Complaint, paragraph by paragraph, as follows:

COUNT I – BREACH OF CONTRACT

1. Defendants admit the allegations contained in paragraph 1 of the Complaint.

2. Defendants admit the allegations contained in paragraph 2 of the Complaint.

3. Defendants admit the allegations contained in paragraph 3 of the Complaint.

4. Defendants admit the allegations contained in paragraph 4 of the Complaint.

5. Defendants admit the allegations contained in paragraph 5 of the Complaint.

6. Defendants admit the allegations contained in paragraph 6 of the Complaint.

7. Defendants admit so much of the allegations contained in paragraph 7 of the Complaint which allege that the parties met at Mr. Garcia's home to discuss work he was able to do. Defendants deny the remaining allegation contained in paragraph 7 of the Complaint.

8. Defendants admit so much of the allegations contained in paragraph 8 of the Complaint which allege that the parties went to Mrs. Mohammed's home to look at the work that needed to be done. Defendants deny the remaining allegations contained in paragraph 8 of the Complaint.

9. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint.

10. Defendants admit so much of the allegations contained in paragraph 10 of the Complaint which allege that Ms. Mohammed gave Defendants a check in the amount of $30,666.00. Defendants deny the remaining allegations contained in paragraph 10 of the Complaint.

11. Defendants admit so much of the allegations contained in paragraph 11 of the Complaint which allege that Mr. Garcia appeared on June 18, 2018. Defendants deny the remaining allegations contained in paragraph 11 of the Complaint.

12. Defendants admit the allegations contained in paragraph 12 of the Complaint.

13. Defendants deny the allegations contained in paragraph 13 of the Complaint.

14. Defendants deny the allegations contained in paragraph 14 of the Complaint.

15. Defendants admit so much of the allegations contained in paragraph 15 of the Complaint which allege that Ms. Mohammed wrote a check to Mr. Garcia for $15,000.00 and gave him a check for $1,950.00, both dated June 28, 2018. Defendants deny the remaining allegations contained in paragraph 15 of the Complaint.

16. Defendants admit the allegations contained in paragraph 16 of the Complaint.

17. Defendants admit so much of the allegations contained in paragraph 17 of the Complaint which allege that on July 3, 2018, Mr. Garcia requested $6,000.00. Defendants deny the remaining allegations contained in paragraph 17 of the Complaint. Defendants state that to the extent the allegations contained in paragraph 17 are from a written document, the document speaks for itself and, to the extent the allegations of paragraph 17 are inconsistent with any such document, Defendants deny the allegations in paragraph 17.

18. Defendants admit so much of the allegations contained in paragraph 18 of the Complaint which allege that Ms. Mohammed wrote a check to Mr. Garcia for $6,000.00 Defendants deny the remaining allegations contained in paragraph 18 of the Complaint.

19. Defendants admit so much of the allegations contained in paragraph 19 of the Complaint which allege that a central air unit was not installed. Defendants deny the remaining allegations contained in paragraph 19 of the Complaint.

20. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the complaint.

21. Defendants deny the allegations contained in paragraph 21 of the Complaint.

22. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the complaint which allege that from July 3, 2018 through July 16, 2018, no work was done at Ms. Mohammed's home. Defendants deny the remaining allegations contained in paragraph 22 of the Complaint.

23. Defendants deny the allegations contained in paragraph 23 of the Complaint.

24. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the complaint.

25. Defendants deny the allegations contained in paragraph 25 of the Complaint.

26. Defendants deny the allegations contained in paragraph 26 of the Complaint.

27. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the complaint.

28. Defendants admit so much of the allegations contained in paragraph 28 of the Complaint which allege that insulation was installed in the attic. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28 of the Complaint.

29. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

30. Defendants deny the allegations contained in paragraph 30 of the Complaint.

31. Defendants deny the allegations contained in paragraph 30 of the Complaint.

32. Defendants admit so much of the allegations contained in paragraph 32 of the Complaint which allege that Mr. Garcia did not pay for a hotel room. Defendants deny the remaining allegations contained in paragraph 32 of the Complaint.

33. Defendants deny the allegations contained in paragraph 33 of the Complaint.

34. Defendants admit so much of the allegations contained in paragraph 34 of the Complaint which allege that Mr. Garcia had installed skylights. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34 of the Complaint.

35. Defendants deny the allegations contained in paragraph 35 of the Complaint.

36. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint.

37. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint.

38. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

39. Defendants state that to the extent the allegations contained in paragraph 39 are from a written document, the documents speaks for itself and, to the extent the allegations of paragraph 39 are inconsistent with any such document, Defendants deny the allegations in paragraph 39. To the extent that paragraph 39 contains allegations neither set forth in a written document nor inconsistent with such a document, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint.

40. Defendants deny the allegations contained in paragraph 40 of the Complaint.

41. Defendants deny the allegations contained in paragraph 41 of the Complaint.

42. Defendants deny the allegations contained in paragraph 42 of the Complaint.

43. Defendants deny the allegations contained in paragraph 43 of the Complaint.

44. Defendants admit so much of the allegations contained in paragraph 44 of the Complaint which allege that Mr. Garcia did not install a central air unit. Defendants deny the remaining allegations contained in paragraph 44 of the Complaint.

45. Defendants admit so much of the allegations contained in paragraph 45 of the Complaint which allege that Mr. Garcia did not obtain any permits. Defendants deny the remaining allegations contained in paragraph 45 of the Complaint.

46. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint which allege that on or about October 8, 2018, Ms. Mohammed obtained an estimate. Defendants deny the remaining allegations contained in paragraph 46 of the Complaint.

47. Defendants deny the allegations contained in paragraph 47 of the Complaint.

48. Defendants deny the allegations contained in paragraph 48 of the Complaint.

## COUNT II – UNJUST ENRICHMENT

49. Defendants adopt by reference their responses to paragraphs 1 through 48 of the Complaint as if set forth at length herein.

50. Defendants deny the allegations contained in paragraph 50 of the Complaint.

## COUNT III – VIOLATION OF M.G.L. c. 142A

51. Defendants adopt by reference their responses to paragraphs 1 through 50 of the Complaint as if set forth at length herein.

52. Defendants deny the allegations contained in paragraph 52 of the Complaint.

53. Defendants state that this paragraph contains a legal conclusion for which no answer is necessary; however, to the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of the Complaint.

## COUNT IV – FRAUD

54. Defendants adopt by reference their responses to paragraphs 1 through 53 of the Complaint as if set forth at length herein.

55. Defendants deny the allegations contained in paragraph 55 of the Complaint.

56. Defendants deny the allegations contained in paragraph 56 of the Complaint.

57. Defendants admit so much of the allegations contained in paragraph 57 of the Complaint which allege that Defendants were not insured as Mr. Garcia advised Ms. Mohammed that he did not have insurance. Defendants deny the remaining allegations contained in paragraph 57 of the Complaint.

58. Defendants deny the allegations contained in paragraph 58 of the Complaint.

COUNT V – VIOLATION OF M.G.L. C. 93A

59. Defendants adopt by reference their responses to paragraphs 1 through 58 of the Complaint as if set forth at length herein.

60. Defendants state that this paragraph contains a legal conclusion for which no answer is necessary; however, to the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60 of the Complaint.

61. Defendants deny the allegations contained in paragraph 61 of the Complaint.

62. Defendants deny the allegations contained in paragraph 62 of the Complaint.

63. Defendants state that this paragraph contains a legal conclusion for which no answer is necessary; however, to the extent a response is required, Defendants deny the allegations contained in paragraph 63 of the Complaint.

64. Defendants state that this paragraph contains a legal conclusion for which no answer is necessary; however, to the extent a response is required, Defendants deny the allegations contained in paragraph 64 of the Complaint.

65. Defendants admit so much of the allegations contained in paragraph 65 of the Complaint which allege that Plaintiff sent Defendants a demand letter on or about October 17, 2018, and that Defendants, through counsel, responded on or about November 3, 2018. Defendants deny the remaining allegations contained in paragraph 65 of the Complaint.

66. Defendants deny the allegations contained in paragraph 66 of the Complaint.

WHEREFORE, Defendants deny that Plaintiff is entitled to judgment in any amount or relief of any kind and demands that the Complaint be dismissed, and judgment entered in favor of Defendants with the costs and disbursements of this action.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is barred by operation of the doctrine of estoppel from pursuing some or all of the claims asserted in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is barred by operation of the doctrine of fraud from pursuing some or all of the claims asserted in the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred by application of the doctrine of laches from pursuing some or all of the claims asserted in the Complaint.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is barred by application of the doctrine of unclean hands from pursuing some or all of the claims asserted in the Complaint.

### SIXTH AFFIRMATIVE DEFENSE

Defendants deny each and every allegation of the Complaint except as specifically admitted above.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants state that Plaintiff has not been damaged in any amount.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is barred by operation of the doctrine of waiver from pursuing some or all of the claims asserted in the Complaint.

## NINTH AFFIRMATIVE DEFENSE

Defendants state that Plaintiff breached the terms of her agreement with Defendant and is, therefore, barred from maintaining this action.

**WHEREFORE,** Defendants deny that Plaintiff is entitled to judgment in any amount or relief of any kind and demands that the Complaint be dismissed, and judgment entered in favor of Defendants with the costs and disbursements of this action.

Defendants,
By their attorneys,

Mark T. Stopa (BBO# 560264)
Preston L. Clinton (BBO# 690373)
STOPA & ASSOCIATES, LLC
132 Central Street – Suite 209
Foxboro, Massachusetts 02035
(508) 543-0600
mtstopa@stopaandassociates.com
preston.clinton@stopaandassociates.com

Dated: January 15, 2019

### CERTIFICATE OF SERVICE

I, Preston L. Clinton, hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by first-class mail postage prepaid and e-mail: carl@brugnolilaw.com.

Preston L. Clinton

January 15, 2019

**EXHIBIT "C"**

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                              NORFOLK SUPERIOR COURT
                                         DOCKET NO. 1882 CV 1591

ANESHA MOHAMMED,          )
        PLAINTIFF,        )
v.                        )
LEONICIO GARCIA and       )              PLAINTIFF'S AFFIDAVIT
GS CONSTRUCTION CORP,     )              IN SUPPORT OF MOTION
                          )              TO ATTACH REAL ESTATE
        DEFENDANT.        )
_____)

Now comes Anesha Mohammed, under oath, and says that there is a reasonable likelihood that I will recover a Judgment in the amount of $85,566.00 plus treble damages and attorney's fees and sets forth the following facts upon which this statement is based.

1.  I am individual of legal age presently residing at 103 Gordon Ave., Hyde Park, Suffolk County, Massachusetts.  I am the Plaintiff in this matter and I am familiar with the facts in this case.

2.  The Defendant, Leonicio Garcia is an individual of legal age presently residing at 17 Beech Street, Dedham, Norfolk County, Massachusetts.

3. The Defendant, GS Construction Corp. is a duly organized Massachusetts corporation presently doing business at 17 Beech Street, Dedham, Norfolk County, Massachusetts.

4. Sometime in late May of 2018, I discussed a home improvement project with the Defendant relative to refurbishing a bathroom.

5. Mr. Garcia agreed to do the work and I paid him a down payment of $1,950.00 on June 13, 2018 at his request.

6. On June 16, 2018, the Defendant invited me to his home to review his work and represented to me that he was a licensed and insured general contractor and that he would provide me with a contract. It turns out that these representations were false.

7.  Mr. Garcia came to my home the same day to look at the work that needed to be done. We agreed on the scope and cost of the project, which included, but was not limited to, refurbishing the upstairs bathroom, install new windows and insulate the porch, fix and replace the outside

stairs, walkway, landing, install a fence around the yard, rebuild a deck and possibly install a second floor deck, rewire the home, install new lighting fixtures, and remove and replace numerous windows and skylights. We also agreed that Mr. Garcia would pull all of the necessary permits to start the work.

8. Mr. Garcia stated that he could start working the following Monday, June 18, 2018, if I could pay a second deposit.

9. I gave Mr. Garcia a check for $30,666.00 which was one third of the cost of the project. I asked Mr. Garcia for a contract and he said that he would provide one on the following Monday when he was going to start working.

10. Mr. Garcia came to my home on Monday, June 18, 2018 without a contract but said he would bring it the next day.

11. On June 28, 2018, we agreed that Mr. Garcia would install central air in my home and demanded the full amount of $15,000.00 and promised to install the central air that weekend. I also gave him a check for $1,950.00 as a final deposit for the work in the bathroom.

12. On June 28, 2018, I asked Mr. Garcia for a contract.  Again I was promised that he would provide a contract.

13. On July 3, 2018, I wrote a check for $6,000.00 to Mr. Garcia at his request for electrical work.

14. On or around July 16, 2018, I asked that Mr. Garcia return the $15,000.00 since he had not installed the central air but he refused.

15. Mr. Garcia did not perform any work on my home from July 3, 2018 through July 16, 2018.

16. Mr. Garcia returned to work on July 16, 2018 on my home and I learned that all of Mr. Garcia's employees are undocumented and do not have home improvement skills or licenses. I immediately raised my concerns to Mr. Garcia in that I was worried that the unskilled and undocumented workers would not complete the work in a workmanlike manner.

17. On July 19, 2018, some subcontractors arrived at my home to install some insulation in the attic and for the first time, I learned that my family and I would not be able to stay in the home while the insulation was being installed.

18. On July 19, 2018, I contacted Mr. Garcia and he said he would pay for a hotel room for my family and I to stay in while the insulation was being installed.  He did not repay me for the hotel stay.

19.  On August 2, 2018, Mr. Garcia told me that he had hired a new subcontractor named, "John", and that John could handle any issues.

20. It rained heavily from August 2, 2018 and August 4, 2018 and the skylights that Mr. Garcia installed started to leak.

21. I contacted "John" about the leaking skylights and he said he didn't work on the weekends.

22.  I contacted Mr. Garcia about the leaking skylights and he said it wasn't his fault, that he wouldn't repair it, and he would quit the job.

23. On August 8, 2018, Mr. Garcia contacted me to let me know he was quitting the job.

24. I asked Mr. Garcia for a refund of the money I had paid but he refused.

25. Mr. Garcia did not complete the work in the bathroom or attic in breach of our oral contract.

26. Mr. Garcia did not install the central air unit in breach of our oral contact.

27. Mr. Garcia did not obtain any of the permits for any of the work he performed in violation of our contract.

28. On October 8, 2018, I obtained an estimate from a structural engineer as to what it would cost to repair the damage done by Mr. Garcia, a well as to complete the work that he started but never finished.

29. The estimate I was provided was for $30,000.00, and the structural engineer said that Mr. Garcia's work was shoddy, incomplete, and not done in a workmanlike manner and that he had damaged the foundation of the home which undermined the structural integrity of the home.

30. I asked Mr. Garcia for a written contract numerous times but he never provided one, which is a direct violation of M.G.L. Chapter 93A, as well as M.G.L. Chapter 142A.

31. According to the Massachusetts Consumer Affairs and Business Regulations, Mr. Garcia was not licensed as a contractor at the time he was working at my home and did not have insurance.

32. I would never have hired Mr. Garcia if I knew that he was not fully licensed and insured.

33.  I have alleged violations of M.G.L. Chapter 93A, as well as M.G.L. Chapter 142A. It is undisputed that the Defendant did not provide me with a written contract. It is also undisputed that I paid him $15,000.00 to install central air, and he did not install the central air nor did he return my money.  As such, this is a clear violation of Chapter 142, which is a per se violation of Chapter 93A. As such the Defendants have a substantial likelihood of having a very large judgment entered against them.

34. There is a substantial likelihood that I will recover against the Defendants in the amount of the complaint plus treble damages and attorney fees.

35. I know of no liability insurance available to satisfy any judgement the plaintiff may recover against the Defendant.

37. The Defendants owns property in Norfolk County, and this attachment is necessary to ensure that the Defendants do not transfer this property out of their name.

The Plaintiff state that the information set forth herein is true, to the best of my personal knowledge and belief, and that the allegations set forth in the complaint are true, to the best of my personal knowledge and belief.

Signed this 14th day of January, under the penalties of perjury,

The Plaintiff,

Anesha Mohammed