## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**LEONCIO GARCIA,**<br><br>　　　　　　　　　**Debtor** | **Chapter 7**<br>**Case No. 19-10634-FJB** |
| **ANESHA MOHAMMED,**<br><br>　　　　　　　　**Plaintiff**<br><br>**v.**<br><br>**LEONCIO GARCIA,**<br><br>　　　　　　　**Defendant** | **Adversary Proceeding**<br>**No. 19-1027** |

### MEMORANDUM OF DECISION

By the remaining count in this adversary proceeding, the plaintiff seeks a determination that a judgment debt owed to her by the defendant and chapter 7 debtor, Leoncio Garcia, is excepted from discharge in this bankruptcy case by operation of Bankruptcy Code § 523(a)(2)(A).  After a trial, I now enter the following findings of fact and conclusions of law under Fed. R. Civ. P. 52(a)(1),  made applicable by Fed. R. Bankr. P. 7052.  On the basis thereof, I find that the Plaintiff has failed to carry her burden of establishing the requirements of nondischargeability under § 523(a)(2)(A), and accordingly, dismiss this adversary complaint.

### PROCEDURAL HISTORY

On February 28, 2019, Leoncio Garcia ("Garcia" or the "Debtor") filed a petition for relief under chapter 7 of the  Bankruptcy Code.  In the bankruptcy case thereby commenced, Anesha Mohammed ("Mohammed" or the "Plaintiff") filed the complaint commencing  the present adversary proceeding.  It seeks relief in two counts.  At the start of the trial, the Plaintiff stated her basis for relief relies entirely on a

determination of nondischargeability under § 523(a)(2)(A), thereby waiving Count II of the adversary

complaint, which sought similar relief under § 523(a)(6).  In the remaining count, the Plaintiff seeks a

determination that Garcia's debt is excepted from the discharge under 11 U.S.C. § 523(a)(2)(A).  The

Plaintiff contends that her judgment against the Debtor is one for money obtained by false representations.

After trial, the parties submitted proposed findings of fact and conclusions of law.

**FINDINGS OF FACT**

The parties together introduced a total of twenty-three exhibits and offered the testimony of two

witnesses: the Plaintiff and the Debtor.  I found both parties were credible witnesses; however, I found

the Debtor more credible on the critical issues before me.  My findings of fact are stated as follows or

included in my analysis as appropriate.

The Plaintiff resides at 103 Gordon Avenue, Hyde Park, Massachusetts.  In or around May 2018,

the Plaintiff had discussions with the Debtor about hiring his company, G.S. Construction Corp., and him to

perform some home improvement work, specifically remodeling a second-floor bathroom.  Prior to

engaging the Debtor, the Plaintiff found and reviewed his company's website, which stated that he was a

licensed and insured contractor.  The Debtor, an immigrant to the United States, told the Plaintiff that he

was a civil engineer when he lived in Brazil and that he was taking classes at Northeastern University so he

could get his home improvement contractor's license.  The Debtor sent the Plaintiff a proposal for the

work on her bathroom that included a proposed cost of $3,900.  He further requested a down payment so

he could purchase materials.  The Plaintiff delivered to the Debtor a check dated June 13, 2018, in the

amount of $1,950 as a deposit for the bathroom renovation.

The parties later met at the Debtor's home so the Plaintiff could see examples of other work the

Plaintiff was considering.  On June 16, 2018, the parties discussed and agreed that the Debtor would

perform additional work, including insulating the Plaintiff's porch; fixing and replacing certain outdoor

stairs, walkway, and landing; installing a fence; rebuilding a deck and possibly installing a second-floor

deck; rewiring her home; installing new lighting fixtures; and removing and replacing numerous windows

and skylights for a total contract amount of $100,000.  The Debtor told the Plaintiff that he would

complete all of this work by the Fall of 2018.  The Plaintiff wrote the Debtor a second check dated June 16,

2018, in the amount of $30,666 as a deposit for the additional work and the Debtor agreed to begin the

renovation work on Monday, June 18, 2018.

On June 28, 2018, the Plaintiff again added to the work.  The parties agreed that the Debtor would

install central air conditioning in the Plaintiff's home.  The Debtor stated that if the Plaintiff paid the full

amount of $15,000 for an air conditioning unit, he could have it installed that weekend.  The Debtor wrote

the Debtor a third check dated June 28, 2018, in the amount of $15,000 for the full amount of the air

conditioning installation.  The Debtor testified that when he attempted to hire a subcontractor to install

the air conditioning system, he was unable to line up the subcontractor for that weekend.  After a few

weeks, when the air conditioning was not installed, the Plaintiff cancelled her request for it and asked the

Debtor for her $15,000 back.  The Debtor did not return the $15,000 to the Plaintiff; rather, he applied it to

certain of the other renovations he was performing at her home.

The Plaintiff made two more payments to the Debtor during this time period.  She delivered a

check dated June 28, 2018, in the amount of $1,950, as a final payment for the bathroom remodel, and a

check dated July 3, 2018, in the amount of $6,000, to complete the electrical work.   The Debtor continued

to work on the Plaintiff's home until August 2018 when the Plaintiff fired him.

During the period the Debtor was working on the Plaintiff's home, he did not obtain any municipal

renovation or construction permits.  The parties discussed the Plaintiff's previous experience with

contractors not obtaining permits for work on her house.  It is uncontested that the Plaintiff told the

Debtor that she did not want him to get any building permits for any of the work.

In total, the Plaintiff paid the Debtor $55,566.  Though none of the projects were completed, the

Debtor testified that he provided labor and materials valued at $70,700 on the project.

In or about January 2019, the Plaintiff had the City of Boston inspect her home.  According to the

Plaintiff, the inspector stated that the city may suspend the Debtor's home improvement license because

he did not obtain necessary permits for the work.  According to the Plaintiff, because the Debtor failed to complete the construction projects, the home was damaged by rain.  The inspector also raised concerns that the Debtor had caused structural damage to the Plaintiff's house.  Subsequently, the Plaintiff says she hired an architect, a structural engineer, and other contractors to repair and complete the work on her house.

**JURISDICTION**

The matter before the court is a complaint under 11 U.S.C. § 523(a) to determine the dischargeability of a debt.  The matter arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing  order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).  It is a core  proceeding.  28 U.S.C. § 157(b)(2)(I) (core proceedings include determinations as to the dischargeability of  particular debts).  This court accordingly has authority to enter final judgment in the matter.  28 U.S.C. § 157(b)(1).

**DISCUSSION**

    **a.  Applicable Law**

As noted above, the remaining count in this proceeding is the Plaintiff's assertion that her  judgment against the Debtor is nondischargeable under 11 U.S.C. § 523(a)(2)(A).   It is axiomatic that exceptions to discharge are to be narrowly construed and that all genuine doubts should be resolved in favor of the Debtor and against the Plaintiff.  Under section 523(a)(2)(A), a **"**discharge under . . . this title does not discharge an individual debtor from any debt — for money,  property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or  an insider's financial condition."   The Plaintiff bases her § 523(a)(2)(A) claim entirely on false representations.

The First Circuit applies a six-part test for establishing nondischargeability under § 523(a)(2)(A),  the so-called *Palmacci* test:

      in order to establish that a debt is nondischargeable because obtained by

"false pretenses, a false representation, or actual fraud," we have held that
a creditor must show that 1) the debtor made a knowingly false
representation or one made in reckless disregard of the truth, 2) the
debtor intended to deceive, 3) the debtor intended to induce the creditor
to rely upon the false statement, 4) the creditor actually relied upon the
misrepresentation, 5) the creditor's reliance was justifiable, and 6) the
reliance upon the false statement caused damage.

*McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001) (citing *Palmacci v. Umpierrez*, 121 F.3d 781,

786 (1st Cir. 1997)).  A party seeking to except a debt from discharge bears the burden of proving each

element by a preponderance of evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).  A mere breach of a

contract alone does not establish fraud or misrepresentation for the purposes of section 523(a)(2)(A).

*Vaks et al v. Grenier (In re Grenier)*, 2009 WL 763352, at *21 (Bankr. D. Mass. 2009).

Intent to deceive refers to the Debtor's mental state and specifically requires a mental state

embracing an intent to deceive, manipulate, or defraud. *Palmacci*, 121 F.3d at 786-87 (citing *Ernst & Ernst v.

Hochfelder*, 425 U.S. 185, 193 (1976)).  "Availability of direct evidence to prove a debtor's intent to deceive a

creditor is unlikely to be obtained.  The court,  therefore, may infer fraudulent intent from the totality of

circumstances."  *Danvers Savings Bank v.  Alexander (In re Alexander)*, 427 B.R. 183, 195 (Bankr. D. Mass.

2010) (citing *Palmacci*, 121 F.3d at 789).

The final four elements embody the requirement that the creditor's claim must arise directly from

the debtor's fraud.  *McCrory*, 260 F.3d at 32.  As to the creditor's reliance, the Supreme Court of the United

States has held that § 523(a)(2)(A) requires only justifiable reliance—a lower standard than reasonableness.

*Field v. Mans,* 516 U.S. 59, 70 (1995).   Reliance is justifiable if the falsity of the representation would not

have been readily apparent to the person to whom it was made.  *Id.* at 70-72.  Under the justifiable reliance

standard, "a person is justified in relying on a representation of fact 'although he might have ascertained

the falsity of the representation had he made an investigation.'"  *Id.*, (quoting Restatement (Second) of

Torts § 540).  For purposes of determining whether reliance was justified, "the circumstances of the

reliance claim must be taken into account," and "the individual is not obliged to investigate statements

made to him (although he cannot shut his eyes to an obvious falsehood)."  *Lentz v. Spadoni* (*In re Spadoni*),

316 F.3d 56, 59 (1st Cir. 2003).

    **b.  Analysis**

The Plaintiff alleges several misrepresentations under § 523(a)(2)(A): (1) that the Debtor falsely stated, by representation on his website, that he was both a licensed and insured home improvement contractor; (2) that the Debtor made false representations regarding his education and experience; (3) that the Debtor misrepresented his willingness to pull building permits and his ability to complete the jobs in the time frame requested by the Plaintiff; (4) that the Debtor falsely stated that he would provide the Plaintiff with a contract for the work he was hired to perform; and (5) that the Debtor made false representations concerning the installation of the central air conditioning unit and the electrician.  I begin with the Plaintiff's first argument concerning the Debtor's license and insurance.

The alleged misrepresentation as to the status of his home improvement contractor's license is easily disposed: the Debtor produced evidence, which was unrebutted, that his home improvement contractor's license only expired on May 29, 2019.  Thus, at the time the Plaintiff hired him and checked his website, he in fact had a license.  As to insurance, however, the Debtor conceded that he maintained no insurance when he performed work on the Plaintiff's home, thus the statement on his website was untrue.  The Debtor explained that he was involved in a serious car accident in 2017 and, as a result, was stressed, had heart problems, and did not renew his insurance as he intended to wind down his company.  Although the statement on the website was untrue, for several reasons I conclude that the misstatement does not rise to the level of an intentional misrepresentation required under § 523(a)(2)(A).  First, the Debtor's failure to remove the representation regarding insurance from the website does not prove his intent to induce the Plaintiff to hire him.  He testified that she never asked him whether he was insured and that, if she had, he would have told her he was not.  If anything, the failure to remove the text from his company's website shows negligence.  Second, although the Plaintiff testified that she asked the Debtor whether he was insured and that he told her he was, she did not specify what type of insurance coverage she was concerned about, or whether it would have covered the losses she complains of now.  Third, a

6

reasonably diligent homeowner would have asked the contractor for an insurance binder specifying the coverage at issue; the Plaintiff never did this.  Therefore, I find that while the Debtor's company website stating he was insured was false, the Debtor did not intend to deceive the Plaintiff with such representation, he merely negligently failed to update his website, and the Plaintiff did not establish justifiable reliance on this statement by a preponderance of the evidence.

As to the Plaintiff's second argument, that the Debtor falsely represented his education and experience, the Plaintiff testified that the Debtor told her that he was a civil engineer when he lived in Brazil and that he was taking classes at Northeastern University so he could get his home improvement contractor's license.  The Debtor's testimony is generally consistent with these statements.  He testified that he had worked in construction, on and off, for twenty-five years, that he took courses in civil engineering while in Brazil, and that when he immigrated to the United States, he took English courses at Northeastern University, passed the Test of English as a Foreign Language (TOEFL), and went to UMass Lowell for engineering courses.  While the Debtor's statements to the Plaintiff may not have been as thorough or specific as those made during his direct testimony or cross-examination by the Plaintiff's counsel, I do not find that he falsely represented his education or experience.  Even if I were to find (which I do not) that the Debtor made these false representations, the Plaintiff has not shown that he did so with intent to deceive her.

While the Plaintiff makes much of the City of Boston's inspection report and the Debtor's failure to obtain home renovation permits, she does not explain, and I do not see how they support her request for relief under § 523(a)(2)(A).  I found the Debtor credible in his testimony that the Plaintiff instructed him not to seek and receive permits.  First, there was no reason for the Debtor *not* to obtain any necessary permits.  Second, the Plaintiff did not establish that the Debtor made any misrepresentation, either by affirmative statement or omission, regarding construction permits.  Moreover, the Plaintiff failed to call the building inspector and failed even to properly admit the inspection report into evidence.  The evidence is clear that the Debtor told the Plaintiff it would take about a week or two for him to complete the first

7

bathroom project and that the second larger project would be completed by the Fall of 2018.  It is also

uncontroverted that none of the work on the Plaintiff's home was completed by the Debtor.  What is

unclear is whether the Debtor intended not to complete these projects in a timely manner as he

represented to the Plaintiff.  The Plaintiff has presented no evidence that these statements were untrue as

of the time the Debtor made them, nor that he intended to deceive her in making them.  Both the Debtor's

and the Plaintiff's testimonies show that the Debtor suffered major health issues and that the projects

kept growing in size and variety while he was working on the Plaintiff's home.  Any of these circumstances

could have impacted the Debtor's ability to complete the projects in a timely manner.

As to the Debtor's purported failure to provide a contract to the Plaintiff, I find that he did, in fact,

provide a contract for the first bathroom project.  The Debtor provided the Plaintiff with a written "Job

Proposal," and that document was admitted into evidence.  While there is no evidence that either party

signed the written "Job Proposal," the document outlined the work to be completed, the amount to be

paid, and the manner in which to pay.  The Plaintiff performed under the contract by making the two

payments of $1,950, and the Debtor began performance by starting work on the bathroom.  As previously

stated, the Debtor did not complete the bathroom project; however, his failure to complete performance

is merely a breach of the contract.  As to the second, larger project, I find that no contract was provided to

the Plaintiff.  The Plaintiff, however, failed to show that the Debtor made a false statement when he stated

he would provide a contract for this work.  The Debtor testified that he was unable to provide the Plaintiff

with a contract due to the Plaintiff constantly changing and adding to the scope of the work to be done.  I

found the Debtor's testimony on this issue credible, and therefore cannot find that he falsely represented

his intent to provide the Plaintiff with a contract.  He simply could not keep up with her changes.

With respect to the Plaintiff's argument regarding the air conditioning unit installation and the

electrician, I find the Debtor made no misrepresentations.  The Plaintiff asked the Debtor whether he could

install an air conditioning unit.  He stated that he could not do it himself, but he would be able to hire a

subcontractor to perform the installation over the weekend if she paid in full up front.  The Plaintiff agreed

8

and wrote the Debtor a check.  The Debtor testified that he was unable to get the subcontractor to do the work and the Plaintiff eventually cancelled the request for the installation.  There is no evidence that the Debtor knew he would not be able to hire the subcontractor when he made those statements to the Plaintiff.  Similarly, the Debtor told the Plaintiff that she would need to complete payment for the electrical work to get the electrician to come and finish that portion of the project.  The Plaintiff has failed to show that the Debtor knew the electrician would not complete the electrical work when he made this statement.

Finally, the Plaintiff failed to carry her burden of proving that her reliance on the Debtor's alleged misrepresentations caused her damage.  First, the Debtor's misrepresentation regarding insurance could only have damaged the Plaintiff if the insurance at issue would have covered her alleged losses.  If the insurance was intended to cover, for example, injuries to workers on the project, the Plaintiff does not allege damages of that sort.  If she is referring to a bond to cover damages to her property, she did not so testify.  It is her burden to support her claim with evidence and not up to the court to speculate.

**CONCLUSION**

For the reasons set forth above, I find that the Plaintiff has failed to establish cause to except her judgment against the Debtor from his discharge under § 523(a)(2)(A), and the court hereby dismisses this adversary complaint.

Date: August 25, 2021

_____
Frank J. Bailey
United States Bankruptcy Judge